IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

YOLANDA McDONALD                                                    PLAINTIFF

V.                                                          NO. 1:07V82-EMB

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                    DEFENDANT

### MEMORANDUM OPINION

Plaintiff Yolanda McDonald seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of Social Security Administration (the "Commissioner"), terminating her prior award of Supplemental Security Income (SSI) benefits under Title XVI of the Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

**Procedural History**

Plaintiff, a 35 year old female born October 12, 1972, was determined to be disabled as of January 1982. On January 10, 2003, in a re-determination, plaintiff was found not to be disabled as of January 1, 2003. This re-determination was upheld upon reconsideration. On September 6, 2006, following a hearing, an Administrative Law Judge (ALJ) found that plaintiff's

disability ended as of January 1, 2003. The Appeals Council, on March 16, 2007, denied plaintiff's request for review. On this action of the Appeals Counsel, the ALJ's decision thus became the final decision of the Commissioner in this case. *See* 20 C.F.R. §§ 404.981, 416.1481. The case is now before this court on plaintiff's appeal from that decision, pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Background**

Plaintiff was nine years of age when she was first awarded SSI benefits due to a finding of mild mental retardation and behavior problems. She has no past relevant work and claims she continues to be disabled due to her mental retardation and an impairment of her muscular skeleton system – that is, her back hurts, her feet and right hand swell up all the time, and she suffers constant pain.

**Applicable Law**

The ALJ correctly recognized that in determining whether plaintiff continues to be disabled he was required to follow a seven-step evaluation process. 20 CFR 416.994. Step One requires a determination of whether the claimant has an impairment or combination of impairments which meet or

medically equal a listing. If so, a determination of disability continues. 20 CFR 416.994(b)(5)(i). At step two, it must be determined if medical improvement in the claimant's condition has occurred. Medical improvement is any decrease in the medical severity of any impairment. Id. at (ii). If medical improvement has occurred, the analysis proceeds to the third step. If not, then to the fourth step. At step three it must be determined whether any medical improvement is related to the ability to work. Id. at (iii). At step four it must be determined whether any exception to medical improvement applies. At step five, it must be determined whether all the claimant's current impairments in combination are severe. Id at (v). If so, the analysis proceeds to step six which requires an assessment of claimant's residual functional capacity and her ability to perform past relevant work. Id. at (vi). If not, the analysis proceeds to step seven for a determination of whether other work exists that the claimant can perform given her RFC, age, education and past work experience. Id. at (vii).

**The ALJ's findings of Fact and Conclusions of Law (TR. 24-31)**

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated February 22, 1982. This is known as the "comparison point decision" or CPD.
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: mental retardation and atypical personality disorder. These impairments were found to meet sections(s) 112.05C of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

3

3. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through January 1, 2003. Thus, <u>the claimiant continued to have mental retardation</u>. [Emphasis in original.]
4. As of January 1, 2003, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
* * *
5. Medical improvement occurred as of January 1, 2003 (20 CFR 416.994(b)(1)(i)).
* * *
6. The claimant's medical improvement is related to the ability to work because, as of January 1, 2003, the claimant no longer had an impairment or combination of impairments that met or medically equaled a listing (20 CFR 416.994(b)(2)(iv)(A)).
7. As of January 1, 2003, the claimant's mental retardation was severe (20 CFR 416.994(b)(5)(v)).
* * *
8. After careful consideration of the entire record, the undersigned finds that, as of January 1, 2003, the claimant had the residual functional capacity that limits her to jobs that do not demand attention to details, or complicated job tasks or instructions; consists of simple routine, repetitive tasks do not require close supervision or contact with supervisors; requires occasional contact with the general public; she can maintain attention and concentration for a minimum of two hours at a time; and she can adapt to changes in the workplace on at least a basic level. In formulating this conclusion, the undersigned relied primarily upon Dr. Linda Baker's mental residual functional capacity assessment (Exhibit 45) which is consistent with the above limitations.
* * *
9. The claimant has no past relevant work (20 CFR 416.965).
10. On January 1, 2003, the claimant is a younger individual age 18-44 (20 CFR 416.963).
* * *
11. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
12. Transferability of job skills is not an issue because the claimant does

not have past relevant work (20 CFR 416.968).

13. As of January 1, 2003, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 416.960) and 416.966).

14. The claimant's disability ended as of January 1, 2003 (20 CFR 416.994(b)(5)(vii).

**Standard of Review**

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. *Perales*, 402 U.S. at 401, S.Ct. at 1427, quoting *Consolidated Edison v. NLRB*, 305 U. S. 197, 229 (1938), It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Fifth Circuit has further defined that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988), quoting *Hames v. Heckler*, 707

F.2d 162, 164 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.

**Decision**

The ALJ's decision reveals that he carefully considered the plaintiff's medical and psychological records and the testimony developed at the hearing. The ALJ found that the plaintiff's mental retardation was severe, relying essentially on a report from Michael Whalen, Ph.D., dated November 22, 2002. (Ex. 43, TR 234-236). The ALJ also relied heavily on a report from state agency psychologist Linda Baker, Ph.D., which found that plaintiff experienced only moderate restrictions in her daily living activities and only moderate difficulties in maintaining social functioning, concentration, persistence and pace. (Ex. 46, TR 241.243).

6

At the hearing plaintiff's counsel took the position that in view of plaintiff's IQ scores in the 60's, the question before the ALJ was whether plaintiff had another impairment or combination of impairments (TR 410). When asked by her counsel what conditions limited her from working, plaintiff replied, "Other than my back be bothering me all the time and my feet just swells up on me all the time." (TR 413). Plaintiff also testified that her right wrist and hand also swell up (TR 414). She further testified to a number of other complaints, including abdominal and pelvic pain. The record reflects that plaintiff underwent an excision of a benign rectal carcinoid on November 3, 2000. A follow-up colonoscopy on June 25, 2002, was normal and showed no evidence of recurrence of the benign carcinoid (TR 221).

Records from the Ackerman Clinic for Women dated November 26, 2002, indicate that plaintiff denied having back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, arthritis, sciatica, restless legs, leg pain at night, and leg pain with exertion. Nevertheless, on this examination at the Clinic, she complained of sporadic, stabbing pain. She was diagnosed with pelvic inflammatory disease, irregular menstruation and an abscessed tooth, for which medication was prescribed (TR 225-227).

The plaintiff's consultative physical examination was conducted by Jim

Adams, M.D., on December 11, 2005. The ALJ accorded little weight to Dr. Adam's assessment of plaintiff's physical limitations because, according to the ALJ, Dr. Adam's assessment was inconsistent with his objective findings and because the assessment relied primarily up0on the plaintiff's subjective complaints. The ALJ's finding in this regard is supported by the record. Dr. Adam's report of his physical exam of plaintiff reported that in all respects, i.e., ENT, lungs, heart, abdomen, extremities, and neurological, she was perfectly normal, except for generalized abdominal pain without abdominal distension – a subjective complaint (TR 265-266).

The plaintiff also complains that the ALJ erred in failing to explain the basis for not crediting Dr. Michael Whelan's opinion that plaintiff was functioning at a level less than 10% of the general population. Here plaintiff is referring to a form which her counsel prepared and sent to Dr. Whelan in which Dr. Whelan was asked to answer three questions:

> In what percent of the general population is the individual [plaintiff] functioning in:
> General learning ability?
> Verbal aptitude?
> Numerical aptitude?

Dr. Whelan's answers to all three questions was less than 3%. (TR 399-400).

Nothing reported by Dr. Whelan on this form, on April 28, 2006, was

inconsistent with his detailed assessment of plaintiff dated November 22, 2002, in which he observed that plaintiff's

> attainment of a driver's license, her successful management of money, as well as her ability to do all the chores around the house, might suggest abilities slightly higher than measured today on testing ...." (TR 235).

Plaintiff contends that the vocational expert (VE) relied upon an incomplete hypothetical question that failed to incorporate Dr. Whelan's answers to the questions contained in the form prepared by plaintiff's counsel. In the first place, there is no showing by plaintiff that the information reported on the form is relevant or material to a determination of whether plaintiff had an impairment other than mild mental retardation. The information reported on this form appears only to reaffirm the finding of mental retardation. Finally, as to any deficiency in the hypothetical question, addressed to the VE, plaintiff's counsel had ample opportunity to frame a hypothetical question incorporating Dr. Whelan's assessment of plaintiff's learning, verbal and numerical aptitude.

**<u>Conclusion</u>**

In summary, the objective findings in plaintiff's medical records, including the objective findings in Dr. Adam's report of December 11, 2005, the records from the Ackerman Clinic for Women, the report from Dr. Whelan of November 22, 2002, and the functional capacity assessment of Dr. Baker of

9

January 8, 2003, together with the testimony of the VE, constitute substantial evidence to support the conclusion of the ALJ that considering the plaintiff's age, education, work experience and residual functional capacity, the plaintiff was able to perform a significant number of jobs in the national economy, and that her disability ended January 1, 2003. Accordingly, the Commissioner's determination of no disability and the denial of disability benefits should be affirmed. A final judgment consistent with this opinion will be entered.

**THIS**, the 16th of April, 2008.

**/s/ Eugene M. Bogen**
**U. S. MAGISTRATE JUDGE**